## ASSIGNMENT, COVENANT NOT TO EXECUTE AND AGREEMENT TO COOPERATE IN LITIGATION

This agreement is made and entered this 12th day of Jan., 2015 by and between Curtis Dolford, Judgment Creditor and Willard Locklear Trucking, LLC, Judgment Debtors.

Recitals:

1. A lawsuit for personal injuries was filed by Curtis Dolford ("Judgment Creditor") against Willard Locklear Trucking, LLC ("Judgment Debtors"), in the Fourth Judicial Circuit of the Court of Common Pleas, Darlington County, case number 2013-CP-16-751 captioned Curtis Dolford v. Adrian Shaw, Individually and as employee/agent of Willard Locklear Trucking, LLC; and Willard Locklear Trucking, LLC ("injury lawsuit"), which case was removed to the United States District Court for the District of South Carolina and re-captioned 4:14-cv-0062-RBH. This Lawsuit resulted in Judgment Debtors' Confession of Judgment. Judgment Creditor now has a judgment against Judgment Debtors in the amount of $2,500,000, plus interest ("judgment").

2. On or about January 31, 2013, Judgment Creditor was injured when his vehicle was struck by a vehicle operated by Adrian Shaw and Owned by Debtor Locklear. Judgment Debtors were insured under a liability insurance policy number CTO1385702 ("the insurance policy") issued by National Casualty Insurance Company.

3. On August 23, 2013, Judgment Creditor made a reasonable offer to National Casualty to settle all claims against Judgment Debtors for the full amount of Judgment Debtors' liability insurance policy limits with National Casualty. Acceptance of the offer required that National Casualty tender said limits by September 6, 2013.

4. By the time National Casualty had received the reasonable offer to settle, National Casualty knew that its insureds were liable for causing severe personal injuries and property damages. The reasonable offer to settle by Judgment Creditor confirmed that if National Casualty rejected the offer, the offer would be withdrawn and not renewed and Judgment Creditor would take the claim to trial and prove that Judgment Debtors were liable for having caused severe personal injuries and property damages.

5. That National Casualty rejected the offer, failed to reimburse Judgment Creditor within the time in which the offer could be accepted, and therefore refused Judgment Creditor's reasonable attempts to settle for Judgment Debtors' policy limits.

6. That, as stated in the offer, Judgment Creditor's offer to settle for policy limits expired upon National Casualty's refusal to timely deliver said limits, and that Judgment Creditor

thereafter filed a lawsuit against Judgment Debtors.

7. That Judgment Debtors evaluated the merits of the case with their attorneys and reasonably believe that their exposure in the lawsuit could exceed $2,500,000 should the action be tried to a verdict.

8. That Judgment Debtors took every step reasonable and necessary to assist National Casualty in resolving this matter without exposing Judgment Debtors to personal liability.

9. That Judgment Creditor made a final offer of settlement in the amount of $1,000,000, that this amount represented a substantial discount on the potential verdict and personal exposure that Judgment Debtors were facing, that Judgment Debtors gave National Casualty an opportunity to resolve the matter without exposing Judgment Debtors to personal liability, and that National Casualty refused Judgment Creditors' repeated attempts to resolve the matter.

10. That, facing the possibility of a personal excess judgment, Judgment Debtors were forced to take actions to protect their interests accepted Judgment Creditor's offer of judgment in the amount of $2,500,000, and were reasonable in allowing such judgment to be taken against them in light of the potential value of the claim.

11. National Casualty's rejection of the reasonable offer to settle within policy limits and the resulting judgment against Judgment Debtors may provide Judgment Debtors a potential cause of action against National Casualty for National Casualty's breach of contract and breach of the implied covenant of good faith and fair dealing by failing to take steps to reasonably resolve the claim.

12. Judgment Debtors' causes of action, if any, against National Casualty in tort for breach of the covenant of good faith and fair dealing and for breach of contract includes damages for the difference between the policy limits and the judgment (plus interest), emotional distress and punitive damages.

**The Parties Agree and Promise as Follows:**

13. Judgment Debtors, either themselves or through any attorney(s) or agent(s), following the Judgment Creditor's August 8, 2013 policy limits offer to settle:

> (i) did not make any demand or request to National Casualty, or any of its agents or insurance brokers, that National Casualty not settle Judgment Creditor's claims; and

(ii) did nothing to impair National Casualty's assessment of the risk of a substantial likelihood of an excess judgment.

14. Judgment Debtors confirm they have not previously assigned any claim in this matter to any other person or entity.

15. Judgment Debtors irrevocably assign to Judgment Creditor all legally assignable rights, remedies, titles and/or interest in their claims, if any, for damages against National Casualty for breach of contract, breach of the covenant of good faith and fair dealing, attorneys fees, fraud and/or declaratory relief ("contract/tort claims") arising from the failure of National Casualty to accept Judgment Creditor's reasonable offers to settle for Judgment Debtors' policy limits.

16. Judgment Debtors agree to reasonably cooperate in the prosecution of a joint bad faith action against National Casualty, including, but not limited to:

(a) taking all reasonable steps necessary to obtain a copy of their entire client file from Judgment Debtors' defense lawyers in the underlying trial:

(b) providing Judgment Creditor with copies of all documents and correspondence between Judgment Debtors and National Casualty relating to the claim involved in the above-described litigation, and

(c) directing, to the extent Judgment Debtor has such authority, Judgment Debtors' trial counsel to cooperate fully with Judgment Creditor's attorneys with the claims against National Casualty, including producing the attorney's complete file including all work product including internal memorandum and email, correspondence, working papers, and reports to National Casualty.

d) answering interrogatories in a timely manner, attending deposition, settlement conferences and trial and reasonably participating in the prosecution of the bad faith lawsuit; and

e) meeting and conferring with counsel for Judgment Creditor in the prosecution of the bad faith lawsuit.

17. In exchange for this assignment, as long as Judgment Debtors reasonably cooperate in the prosecution of the bad faith lawsuit, Judgment Creditor agrees not to levy upon Judgment Debtors' real or personal property and will not seek execution of the judgment on Judgment Debtors, personally; and that once the bad faith lawsuit is resolved, dismissed or a final judgment is entered this covenant not to execute in favor of Judgment Debtors will become permanent and the Judgment will be marked

satisfied.

18. The parties agree to execute any additional documents reasonably required from time to time hereafter to effect this agreement.

19. The language in all parts of this agreement shall in all cases be construed as a whole according to its fair meaning and not strictly for or against any party. The parties agree that each party has reviewed this agreement and has had the opportunity to have independent counsel review the same and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this agreement or any amendment or any exhibits thereof.

20. In the event of the death or dissolution of a Judgment Debtor during the pendency of this agreement:

> (a) Judgment Debtor's personal rights for emotional distress shall expire as allowed by law;
>
> (b) Judgment Debtor's personal representative and estate shall be substituted as plaintiffs, and shall continue as a plaintiff;
>
> (c) and this agreement shall be binding upon Judgment Debtor's heirs, beneficiaries, assigns, trustee, and any other person or entity claiming through Judgment Debtor.

21. In the event any provision of this Agreement is found to be illegal or unenforceable, such illegality or unenforceability shall not prevent enforcement of all other provisions.

22. South Carolina law shall govern the construction and enforcement of this Agreement and the parties agree that any litigation pertaining to this agreement shall be filed in Darlington County.

23. Judgment Creditor agrees that it will not in any event pursue any claims relating to the injuries he suffered against Willard Locklear or Betty Locklear individually, so long as they reasonably cooperate in the prosecution of the bad faith action as set forth herein.

[signatures on following page]

**AGREED:**

CURTIS DOLFORD

By: _____
Georgeanna Benjamin, Guardian Ad Litem


WILLARD LOCKLEAR TRUCKING, LLC

By: _____
Willard Locklear, Member/Manager